[No. 44951. En Banc. October 5, 1978.]

MICHAEL RICHARD WILSON, *Petitioner,* v. BOARD OF
GOVERNORS, WASHINGTON STATE BAR ASSO-
CIATION, *Respondent.*

*Michael Richard Wilson,* pro se.
*Robert T. Farrell,* for respondent.

HAMILTON, J.—This is an application by Michael Richard Wilson (petitioner) for an order to require the Board of Governors of the Washington State Bar Association (respondent) to examine him as to his qualifications to practice law; or, in the alternative, to grant him 4 years advanced standing in the clerkship program and permit him to take the Washington State Bar Examination.

Petitioner attended and graduated from Western State University College of Law (a proprietary school), San Diego, California (Western). It is accredited by the California Committee of Bar Examiners, but it has not been approved by the American Bar Association (ABA). Washington Admission to Practice Rules (APR) require that in order to sit for this state's bar examination applicants must be graduates of an approved law school. Respondent has for some time maintained a policy whereby it defines an approved law school as one which has been approved by the ABA. If an applicant has not graduated from an approved law school, the Admission to Practice Rules provide that one may gain permission to sit for the

bar examination by completing a 4–year clerkship under the supervision of a member of the Washington State Bar.

Petitioner was informed of these rules some time prior to his graduation from Western. He was aware that Western was not an ABA approved law school and, therefore, not an approved law school within the meaning of APR 2(A) and (B).[1] Nonetheless, on December 2, 1975, he filed an application for admission by examination to the Washington State Bar Association. In addition, he filed a registration form and request for 4 years advanced standing in the clerkship program. He based his request for advanced standing not upon completion of a supervised clerkship, but rather upon his graduation from Western.

Respondent considered petitioner's application which evidenced his graduation from Western. Pursuant to APR 2(A) and (B), it denied him permission to sit for the bar examination.

Respondent then considered petitioner's request for advanced standing in the clerkship program. It reviewed petitioner's law school record and a sample of his written legal work. Acting pursuant to APR 2(D)(5) respondent granted petitioner 1 year advanced standing.[2] Petitioner was thus required to complete 3 additional years in a supervised clerkship program in order to gain permission to take the bar examination.

---

[1] "A. **Definitions.** A 'general applicant' means either (1) a graduate of an approved law school who does not qualify as an attorney applicant under Rule 3, or (2) a registered law clerk who has satisfactorily completed the course of study prescribed by these Rules.

"An 'approved law school' means a law school approved by the board of governors. The board of governors shall keep a list of approved law schools on file with the State Bar Association and the Clerk of the Supreme Court." APR 2(A).

"B. **Qualifications.** A general applicant, in order to be permitted to take the bar examination, must

"(1) present satisfactory proof of either (a) graduation from an approved law school, or (b) satisfactory completion of the course of study prescribed for a registered law clerk by these Rules;" APR 2(B).

[2] "(5) *Advanced Standing—Special Students.* A registered law clerk who has attended either an approved or a nonapproved law school, may, in the discretion of the board, receive credit for work done and obtain advanced standing. In no

Being dissatisfied, petitioner filed a petition seeking to compel respondent to allow him to take the bar exam. He challenged the constitutionality of respondent's actions on due process grounds. Petitioner also contended he was entitled to a hearing under the provisions of the administrative procedures act, and that certain of respondent's actions were arbitrary and capricious. The petition was first heard in the Superior Court for Pierce County. That court disagreed with petitioner and dismissed his petition. Petitioner then was granted review by this court and renewed each of his contentions.

First, petitioner argues that the substance of APR 2(A) and (B) is arbitrary, capricious, and therefore unreasonable. We disagree.

It is not arbitrary to enact a rule limiting permission to take the bar examination to a certain class of persons if the chosen limitation is reasonably related to a legitimate objective, such as fitness to practice law. *In re Schatz,* 80 Wn.2d 604, 497 P.2d 153 (1972); *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir. 1966); *Rosenthal v. State Bar Examining Comm.,* 116 Conn. 409, 165 A. 211, 87 A.L.R. 991 (1933). We believe APR 2(A) and (B), and respondent's policy with respect thereto, which, in effect, require that applicants for admission to Washington's bar must have graduated from an ABA approved law school, are reasonable. They are a means of assuring that applicants have a legal education assuring their competency to be allowed to hold themselves out to the public as a lawyer.

The American Bar Association maintains objective and evaluative standards for educational curriculum, faculty competence, faculty wages, admission standards, library materials, library personnel, financial aid and physical plant facilities. *See* Approval of Law Schools, American Bar Association Standards and Rules of Procedure (1973—as amended 1977). These standards are an appropriate and effective means of measuring the quality of a law school.

event will credit be given for fractional parts of semesters or terms, or for correspondence school work." APR 2(D)(5).

For many years we have sanctioned reliance upon them and upon the expertise which the American Bar Association has developed in their application. Our reliance clearly has not been misplaced. Various surveys have pointed out a high correlation between graduation from ABA approved law schools and success in bar exams. *See* Bard & Bamford, *The Bar: Professional Association or Medieval Guild?* 19 Cath. U.L. Rev. 393, 398–99 (1970). The statistics justify respondent's policy of defining an approved law school as one with ABA approval.

Administrative considerations also justify respondent's policy. We have stated that

> [r]ules for admission to the bar are, of course, general in their specifications. They apply to classes of applicants and are drawn to meet normal conditions. They cannot very well be tailored to meet the special merits of individuals or of individual law schools. To require the Board of Governors to look into the individual qualifications and standards of every nonaccredited law school whenever a graduate from that school applies to take the bar examination, would be to impose upon the board an unreasonable burden. The policy of the board sets forth a condition precedent to take the bar examination in this state and it applies to all general applicants who are not otherwise qualified under the Admission to Practice Rules. It is correlative and explicit with the ultimate purpose of all regulations for the admission of attorneys to assure the courts the assistance of advocates of ability, learning, and sound character and to protect the public from incompetent and dishonest practitioners. The policy is a valid and reasonable exercise of the discretion of the Board of Governors as heretofore directed and approved by this court.

*In re Schatz, supra* at 609–10.

Petitioner has not demonstrated that our previous and long-standing approval of respondent's policy has lost either its relevancy to a graduate's competence to practice law or its administrative benefits. It simply cannot be said that requiring graduation from an approved law school, *i.e.,* one approved by the ABA, is an unreasonable means of

assuring that certain applicants for admission to the bar have an adequate legal education. Accordingly, we reaffirm the holding of *In re Schatz, supra.*

Regardless of the substantive validity of respondent's policy, petitioner contends he was deprived of adequate notice of which, if any, law schools were in fact approved by respondent. This procedural due process argument is without merit.

APR 2(A) expressly provides respondent shall keep a list of approved law schools on file with the Clerk of the Supreme Court. Respondent has consistently complied with this rule. A list of its approved law schools was on file with the Clerk of this court at the time petitioner inquired about admission to the bar. Western's name is conspicuously absent from this list. Although petitioner may have received some misinformation from respondent regarding its practices of approving law schools, he admits he was given a copy of APR 2(A), which specifies that the list of approved law schools is on file with this court. In addition, he personally received a copy of the list. Petitioner does not deny that at the time he applied for permission to take the bar examination he was fully aware Western was not an approved law school. Clearly, he had adequate notice.

Petitioner further contends he was entitled to a hearing at the time respondent acted upon his application for permission to take the bar examination. It is his argument that his right to a hearing is firmly established by numerous cases. He directs our attention to, among others, *Konigsberg v. State Bar of California,* 353 U.S. 252, 1 L. Ed. 2d 810, 77 S. Ct. 722 (1957); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957); *Hallinan v. Committee of Bar Examiners,* 65 Cal. 2d 447, 421 P.2d 76, 55 Cal. Rptr. 228 (1966).

We have examined these cases, as well as others petitioner relies upon, and conclude they are clearly distinguishable. In each of the cases petitioner cites, a hearing was required in order to settle a *factual dispute* or to allow

applicants to refute negative inferences regarding moral character.

■ Respondent denied petitioner's application because it demonstrated *on its face* that he graduated from a law school lacking ABA approval and consequently respondent's approval. In contrast to the cases relied upon by petitioner, in this case there exists *no* factual dispute, since the only material fact—lack of graduation from an ABA approved law school—is admitted. Where no dispute exists regarding the only material fact, an adversary hearing involving evidence, cross–examination, etc., is not required. *See Federal Power Comm'n v. Texaco, Inc.,* 377 U.S. 33, 12 L. Ed. 2d 112, 84 S. Ct. 1105 (1964); *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432 (9th Cir. 1971). Accordingly, we reject petitioner's contention on this matter.

We also reject the petitioner's argument that he must be granted a hearing to establish that Western is as sound a law school as one which is in fact ABA approved. As we have stated, the policy of requiring ABA approval is a reasonable means of assuring quality legal education and administrative efficiency. Petitioner, having failed to demonstrate that this requirement is somehow unreasonable, cannot sustain his plea for a case–by–case determination of the individual merits of nonapproved law schools. *In re Schatz, supra.*

■ We next address petitioner's contentions that he had inadequate notice of the standards utilized for awarding advanced standing and that a hearing on this matter was required. These contentions may be answered by noting APR 2(D)(5), a copy of which petitioner admits receiving, states that advanced standing is to be granted *based upon work done.* The granting of advanced standing is a matter firmly committed to respondent's *discretion.* APR 2(D)(5). The subjective merits of Western, which petitioner evidently seeks to present at a hearing, are *not* material under the rule's express terms.

■ Due process requires individuals be given notice and the opportunity to be heard in a proceeding *adapted to the nature of the case. In re Hendrickson,* 12 Wn.2d 600, 123 P.2d 322 (1942).

Petitioner was advised of the criteria set forth in APR 2(D)(5). He thus must have been aware that respondent's action in this matter was discretionary and based solely on the work he has done. Petitioner was afforded an opportunity to submit to respondent extensive documentary material indicative of legal work. The record reflects respondent, upon receipt of this material, reviewed and considered it thoroughly. Thus, respondent conscientiously exercised the discretion which it is granted by APR 2(D)(5). We conclude both APR 2(D)(5) and the method respondent utilized for reviewing petitioner's work and granting credit were sufficient to assure petitioner due process.

■ Petitioner next contends respondent's action granting him only 1 year advanced standing was arbitrary and capricious. As we have stated, the terms of APR 2(D)(5), under which advanced standing is authorized, firmly commit the matter to respondent's discretion. Where action is discretionary, a court will not set it aside in the absence of a clear showing of abuse of discretion. *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 583 P.2d 630 (1978); *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974). A clear abuse of discretion may be shown by demonstrating the discretion was exercised in a manner which was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Marketing Unlimited, Inc. v. Jefferson Chem. Co., supra.*

We, as did the Board of Governors, have carefully perused petitioner's record, including a transcript of his law school grades. Based upon his record, it simply cannot be said that respondent manifestly acted in an unreasonable manner or upon untenable grounds when it granted only 1 year advanced standing in the law clerk program. Accordingly, we find no abuse of discretion in respondent's action.

Finally, we turn to the question of the applicability of the administrative procedures act, RCW 34.04. It is petitioner's argument RCW 34.04 entitles him to a hearing. This argument is meritless. Admission to the bar is a judicial function, and the power to admit attorneys to the bar is exclusively in the Supreme Court. *In re Schatz,* 80 Wn.2d 604, 497 P.2d 153 (1972); *In re Chi–Dooh Li,* 79 Wn.2d 561, 488 P.2d 259 (1971). Respondent acts as an arm of the court in administering the applications process. In that capacity it is clearly within the judicial branch. By its own terms, RCW 34.04 is expressly *inapplicable* to any board within the judicial branch. RCW 34.04.010(1). Thus, that statute is inapplicable to respondent's admissions process, and it affords petitioner no statutory right to a hearing.

The judgment of the trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.